UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, 378 N. Main Avenue Tucson, AZ 85701, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: _____ |
| U.S. FISH AND WILDLIFE SERVICE, 1849 C Street, N.W. Washington, DC 20240, | ) ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| MARTHA WILLIAMS, in her official capacity as acting Director of the U.S. Fish and Wildlife Service, 1849 C Street, N.W. Washington, DC 20240, | ) ) ) ) ) ) ) | |
| and, | ) ) | |
| SECRETARY, U.S. DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W. Washington, DC 20240, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

1.      The Earth is in the midst of an ongoing and unprecedented human-caused

extinction crisis. The United Nations' Intergovernmental Science-Policy Platform on

Biodiversity and Ecosystem Services warns that the current rate of global species extinction is

tens to hundreds of times greater than average over the last 10 million years, and is accelerating.

Approximately one million species are headed toward extinction.

2.      The Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA" or "Act"), is

successful at stopping species' extinction, but the Act can only succeed after species are listed

and thus protected as "endangered" or "threatened" by the U.S. Fish and Wildlife Service

("Service") under section 4 of the ESA. *Id*. § 1533(a), (b). During the Trump administration,

however, the Service listed the fewest number of species as "endangered" or "threatened," on

average, of any administration.

3.      Despite this abysmal record, the Service claims that it has been making

"expeditious progress" in adding species to the lists of endangered and threatened species, as the

agency must show under the ESA, *id*. § 1533(b)(3)(B)(iii), to justify dragging its feet in listing,

at this time, 10 "candidate" species—i.e., 10 species that the Service has determined "warrant"

protection as endangered or threatened but which are awaiting final listing rules. These 10

candidate species are the: northern spotted owl (*Strix occidentalis caurina*); monarch butterfly

(*Danaus plexippus plexippus*); Peñasco least chipmunk (*Tamias minimus atristriatus*); gopher

tortoise (eastern population) (*Gopherus polyphemus*); longfin smelt (San Francisco Bay-Delta

population) (*Spirinchus thaleichthys*); Texas pimpleback (a mussel) (*Cyclonaias petrina*); Texas

fawnsfoot (a mussel) (*Truncilla macrodon*); Texas fatmucket (a mussel) (*Lampsilis bracteate*);

magnificent ramshorn (a snail) (*Planorbella magnifica*); and bracted twistflower (*Streptanthus

bracteatus*) (collectively "10 species"). The Service's baseless claims—that it is making

expeditious progress to add species to the lists of endangered and threatened species, and that the

immediate listing of these 10 species is precluded by other higher priorities—are set forth in

three administrative documents. *See* Review of Domestic Species That Are Candidates for

Listing as Endangered or Threatened; Annual Notification of Findings on Resubmitted Petitions;

Annual Description of Progress on Listing Actions, 85 Fed. Reg. 73,164 (Nov. 16, 2020)

(warranted but precluded finding for the Peñasco least chipmunk, gopher tortoise (eastern population), longfin smelt (San Francisco Bay-Delta population), Texas pimpleback, Texas fawnsfoot, Texas fatmucket, magnificent ramshorn, and bracted twistflower) ("2020 CNOR"); 12-Month Finding for the Northern Spotted Owl, 85 Fed. Reg. 81,144 (Dec. 15, 2020); 12-Month Finding for the Monarch Butterfly, 85 Fed. Reg. 81,813 (Dec. 17, 2020) (collectively "warranted but precluded findings").

4.      The Service claims its ability to complete the ESA rulemakings for these 10 species is being impeded by the agency's focus on higher priority listing activities (including removing species from the lists of endangered and threatened species). Yet the Service is consistently missing its own internal deadlines for these priorities which are set forth in agency "workplans."

5.      Languishing in regulatory limbo without a final listing decision can be a death sentence for these endangered and threatened species. At least 47 species have gone extinct while waiting for protection under the Act. But despite this dark history, the Service has failed to provide these 10 species with urgently needed protections under the ESA for years.

6.      There is no legal justification for the Service's foot-dragging and bureaucratic delays. Rather, the Service's warranted but precluded findings for these 10 species violate the ESA because the Service has not made "expeditious progress" in adding qualified species to the endangered or threatened species lists, and because the Service has not shown that the immediate proposal and prompt final listing of these 10 species is "precluded" by higher-priority imperiled species. 16 U.S.C. § 1533(b)(3)(B)(iii).

7.      Plaintiff Center for Biological Diversity ("Center") thus brings this lawsuit under the ESA's citizen-suit provision to challenge the Service's arbitrary and capricious refusal to protect these 10 species in violation of the ESA. *Id.* § 1540(g)(1)(C).

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to the citizen suit provision of the ESA. *Id.* § 1540(c), (g) ("The several district courts of the United States… shall have jurisdiction over any actions arising under this Act."). The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because this action involves the United States as a defendant and arises under the laws of the United States, including the ESA or, alternatively, the Administrative Procedure Act ("APA"). The requested relief is proper under 16 U.S.C. § 1540(g)(1); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. §§ 704, 706.

9.      The U.S. District Court for the District of Columbia is the proper venue for this action, pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), because Defendants reside in this district.

10.     In compliance with 16 U.S.C. § 1540(g)(2)(C), the Center gave notice to Defendants of the Center's intent to file suit under the Act for the violations described in this complaint more than 60 days ago. These violations have not been remedied.

## PARTIES

11.     The Center is a non-profit corporation headquartered in Tucson, Arizona, with offices throughout the country, including Washington, D.C. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of

extinction. The Center is actively involved in species and habitat protection issues. The Center

has more than 84,000 members throughout the United States and the world.

12.     The Center routinely petitions for the listing of imperiled species as endangered or

threatened, including species such as the longfin smelt, magnificent ramshorn, monarch

butterfly, and many more. On behalf of itself and its members, the Center has an interest in the

effective implementation of the ESA and the timely listing of endangered or threatened species,

including the timely listing of imperiled species for which the Center and others have submitted

listing petitions.

13.     The Center brings this action on behalf of itself and its many members who derive

aesthetic, recreational, scientific, spiritual, and other concrete benefits from the 10 species and

their habitats. The Center has members that endeavor to observe these species and have ongoing

interests in the species and their habitats. The Center has members who have concrete plans to

visit these species' habitats and try to observe them. Defendants' actions have harmed and

continue to harm the Center's members' interests in observing, studying, and otherwise enjoying

the species and their habitats. The relief sought in this case would redress this harm.

14.     Defendants' ESA violations are also subverting the Center's core mission to

safeguard endangered and threatened species. As a consequence of Defendant's unlawful delay

in protecting the species at issue in this suit, the Center has been compelled to expend resources

(exclusive of this litigation) on alternative means of protecting the species, which has diverted

time and resources that could and would have been spent on other activities that are central to the

Center's mission to conserve imperiled species.

15.     Defendant U.S. Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior with delegated primary authority for administration of the ESA with respect to terrestrial species. 50 C.F.R. § 402.01(b).

16.     Defendant Martha Williams is the acting Director of the U.S Fish and Wildlife Service and is charged with ensuring agency decisions comply with the law. Plaintiff sues Defendant Williams in her official capacity.

17.     Defendant Secretary of the Interior ("Secretary") has the ultimate responsibility to administer and implement the provisions of the ESA regarding the 10 species at issue in this suit, and to comply with all other federal laws applicable to the U.S. Department of the Interior. Plaintiff sues Defendant Secretary in their official capacity.

## STATUTORY AND REGULATORY FRAMEWORK

18.     Congress passed the ESA "to provide a program for the conservation of . . . endangered species and threatened species," and to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). The Supreme Court has stated that the ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation[,]" and that the "plain intent of Congress in enacting th[e] statute was to halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180, 184 (1978).

19.     When enacting the ESA, Congress declared that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this [Act]." 16 U.S.C. § 1531(c)(1).

20.     The ESA provides substantive protection for "species" once they are listed as "endangered" or "threatened." *Id.* § 1533. A "species" is defined as "any subspecies of fish or

wildlife or plants, and any distinct population segment ["DPS"] of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range," and a "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(6), (20).

21.     The Service must list a species as endangered or threatened based on the presence of any one or more of five statutory factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id.* § 1533(a)(1). In making its listing determinations, the Service must use the "best scientific and commercial data available . . ." *Id.* § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

22.     The ESA applies a suite of substantive legal protections once species are listed as endangered or threatened. For example, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' "critical habitat." 16 U.S.C. § 1536(a)(2). ESA section 9 prohibits, among other actions, "any person" from "taking" protected wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539. Other provisions require the Service to designate "critical habitat" for listed species, *id.* § 1533(a)(3); require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states in order to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

23.     The ESA includes a process with mandatory deadlines for responding to a petition

from any "interested person" to list a species as endangered or threatened. *Id.* § 1533(b)(3).

Within 12 months after receiving a petition which is found to "present substantial information

indicating that the petitioned action may be warranted," the Service must make one of three

findings: (1) the petitioned action is "not warranted," (2) the petitioned action is "warranted," or

(3) the petitioned action is "warranted, but . . . precluded." *Id.* § 1533(b)(3)(B)(i)–(iii).

24.     If the Service finds that a petitioned action is "warranted but precluded," it must

show that "the immediate proposal and timely promulgation" of a final regulation is both

"precluded by pending proposals to determine whether any species is an endangered species or a

threatened species," *and* that the Service is making "expeditious progress . . . to add qualified

species" to the endangered and threatened species lists "and to remove from such lists species for

which the protections of the Act are no longer necessary." *Id*. § 1533(b)(3)(B)(iii). A "warranted

but precluded" listing determination and the Service's delay in publication of the final regulation

listing a species is lawful only under these "limited conditions," and may not be used to justify

"the foot-dragging efforts of a delinquent agency." H. Rep. No. 97-835, at 22 (1982) (Conf.

Rep.), *as reprinted in* 1982 U.S.C.C.A.N. 2860, 2863.

25.     If the Service determines that a petition to list a species is "warranted but

precluded," the Service must treat that petition "as a petition that is resubmitted to the [the

Service] . . . on the date of such finding." 16 U.S.C. § 1533(b)(3)(C)(i). Hence, the Service must

make a new determination within 12 months as to whether the species will finally be listed or

again denied the Act's protections on the grounds that its listing is "precluded" by other listing

activities. *Id*. The Service typically publishes these "recycled" 12-month findings for "warranted

but precluded" species annually, in a document called a "Candidate Notice of Review"

("CNOR") which is published in the Federal Register. The ESA provides that any "warranted but precluded" finding "shall be subject to judicial review." *Id*. § 1533(b)(3)(C)(ii).

26.     CNORs include all species that the Service has determined to be "candidates" for listing. Candidates are species for which the Service has "on file sufficient information on biological vulnerability and threats to support issuance of a proposal for listing as endangered or threatened, but for which preparation and publication of a proposal is precluded by higher priority listing actions." 85 Fed. Reg. at 73,164. Candidate species include species which have received "warranted but precluded" listing determinations. Although the agency has determined that all candidate species should be listed, based on the best available data—meaning the Service has determined the species need ESA protections to survive—candidates receive none of the Act's substantive protections.

27.     The Service applies "listing priority guidelines" to "determine relative priorities of outstanding actions." 85 Fed. Reg. 73,168. Under this system, the Service assigns candidates a "listing priority number" of 1 to 12. *Id*. Lower numbers signify higher listing priority.

## FACTUAL BACKGROUND

28.     On November 16, 2020, the Service published the 2020 CNOR and determined that eight species continued to warrant listing as endangered or threatened species: the eastern population of gopher tortoise, Texas fatmucket, Texas fawnsfoot, and Texas pimpleback, magnificent ramshorn, bracted twistflower, Peñasco least chipmunk, and the Bay-Delta DPS of the longfin smelt. *See id.* at 73,173–75. Despite each species facing serious imminent threats to their continued existence, the Service has left them in regulatory limbo for years.

29.     The eastern population of gopher tortoise, for instance, has awaited listing for nearly a decade, after the Service first found that it warranted listing in 2011 due to threats

including habitat fragmentation and loss from agricultural and silvicultural practices inhospitable

to the tortoise, urbanization, and the spread of invasive species. 76 Fed. Reg. 45,130, 45,154–155

(July 27, 2011).

30.     Similarly, the Service first found that three freshwater mussels in central Texas—

the Texas fatmucket, Texas fawnsfoot, and Texas pimpleback—warranted listing in 2011 due to

the degradation of their freshwater habitat and habitat loss from dams and impoundments. 76

Fed. Reg. 62,166, 62,177 (Oct. 6, 2011). The Service, then and again in the 2020 CNOR,

assigned these species the highest possible listing priority number. *Id.* at 62,187, 62,201, 62,205.

31.     The magnificent ramshorn, a freshwater mussel endemic to the lower Cape Fear

River basin in North Carolina, was also found to warrant listing in 2011 and appears to be

extirpated from the wild due to habitat loss and degradation, with only a small captive population

remaining in existence. 76 Fed. Reg. 66,370, 66,372–73. (Oct. 26, 2011).

32.     Endemic to a small portion of the Edwards Plateau of Texas, the Service first

found that the bracted twistflower warranted listing in 2011 due to habitat loss from urban

development, over-grazing by white-tailed deer, increased woody plant cover, erosion and

trampling from recreation, a pathogenic fungus, insufficiently protective regulatory mechanisms,

and threats resulting from small remaining population sizes such as insufficient genetic diversity.

*Id.* at 66,373.

33.     In 2012, the Service found that the Bay-Delta DPS of the longfin smelt warranted

listing because the species faces high magnitude threats, including reduced freshwater flows,

contaminants, and introduced species. 77 Fed. Reg. 19,756, 19,787–88 (Apr. 2, 2012); *see also*

85 Fed. Reg. at 73,173 (noting that the effects of climate change currently threaten the species).

Currently, "[l]ongfin smelt abundance over the last decade is the lowest recorded in the 40-year history of surveys…." 85 Fed. Reg. at 73,173.

34.     Finally, the Service in 2012 found that the Peñasco least chipmunk, now gone from one of only two areas it was once known to occur, is threatened by the loss of its native mature ponderosa pine habitat and habitat fragmentation. 77 Fed. Reg. 69,994, 69,996 (Nov. 21, 2012). Given the vulnerability of the last remaining population, the Service determined it warranted listing. *Id.*

35.     On December 15, 2020, the Service also found that the northern spotted owl warranted reclassification from a threatened species to an endangered species due to declining populations and increased extinction risk due to habitat loss, timber harvest, wildfire, insect and forest disease outbreaks, and invasive competitors. 85 Fed. Reg. 81,145–46. The Service found that these stressors "are of such imminence, intensity, and magnitude" that the northern spotted owl "is now in danger of extinction throughout all of its range." *Id.* at 81,146.

36.      On December 17, 2020, the Service found that the monarch butterfly warranted listing under the ESA due to habitat loss and degradation, herbicides, insecticides, the effects of climate change, and the loss of winter habitat in Mexico and California due to logging, poor management, urban development, and drought. 85 Fed. Reg. 81,814–15. As a result of these and other threats, the "probability of the population abundance reaching the point at which extinction is inevitable" is 24–46 percent in 30 years for the eastern North American population, and 92–95 percent in 30 years for the western North American population. *Id.* at 81,815.

37.     Despite finding that listing all 10 of these species is currently warranted—i.e., that the species are in danger of extinction now or in the foreseeable future and in need of the Act's protections—the Service avoided actually doing so. The Service has attempted to justify its foot-

dragging by claiming that it has been making expeditious progress in listing (and de-listing) other species, and that listing these 10 species is precluded by these and other actions. Neither of these assertions are supported by the facts.

*Lack of "Expeditious Progress"*

38.     To justify its "warranted but precluded" determinations for these 10 species, the Service claimed—first in the 2020 CNOR and again in both the northern spotted owl's and monarch butterfly's 12-month findings echoing the excuses set forth in the 2020 CNOR—that it has been making expeditious progress in adding qualified species to the lists of endangered and threatened species. *See* 85 Fed. Reg. 73,169–73; 85 Fed. Reg. at 81,148–52; 85 Fed. Reg. at 81,818–22.

39.     However, the Service listed just seven species in fiscal years 2019 and 2020 as reported in the warranted but precluded findings, *see* 85 Fed. Reg. 73,169; 85 Fed. Reg. at 81,148; 85 Fed. Reg. at 81,818, and listed just 21 species during the entire four years of the Trump administration—a rate of just five species per year.

40.     By comparison, the Service listed a total of 329 species during the eight years of the Obama administration, a rate of 41 species per year, and 508 species during the eight years of the Clinton administration, a rate of 64 species per year.

41.     The Service attempted to blame its paltry rate of listings over the last four years on insufficient funding from Congress. 85 Fed. Reg. at 73,169; 85 Fed. Reg. at 81,148; 85 Fed Reg. at 81,818. However, the Service has listed far more species with fewer resources in the past. The Service's budget for listing has remained consistently between approximately $18–22 million since 2008 and remained so during the Trump administration. Yet during the Trump administration the Service listed a fraction of the species listed during the Obama administration.

42.     The Service also attempted to justify its delay in giving essential protections to the species at issue in this suit by pointing to the agency's work to remove species from the lists of endangered and threatened species, including de-listing seven species and "down-listing" another species from "endangered" to "threatened." 85 Fed. Reg. at 73,169; 85 Fed. Reg. at 81,148; 85 Fed Reg. at 81,818. However, the number of species that lose protections under the Act cannot, by itself, support a "warranted but precluded" finding, which requires the Service to demonstrate that it is making "expeditious progress" both in adding species to the lists of endangered and threatened species and in removing any recovered species from the list. 16 U.S.C. § 1533(b)(3)(B)(iii)(II). In addition, the appropriations for de-listing are separate from those for listings, so the amount of money spent on the former cannot, as a factual as well as a legal matter, detract from the funds available for listing. *See* 85 Fed. Reg. at 73,167 (noting that removing species from the list is not subject to the same funding cap).

*Supposed "Preclusion"*

43.     The Service also fails to detail what higher priority species preclude "the immediate proposal and timely promulgation of a final" listing determination for each of these 10 species, 16 U.S.C. § 1533(b)(3)(B)(iii)(I), and instead vaguely points to a workplan for completing outstanding status assessments and 12-month findings. 85 Fed. Reg. at 73,167–69; 85 Fed. Reg. at 81,146–48; 85 Fed. Reg. at 81,816–18. But the Service never demonstrates how this work *actually* precludes the immediate listing of these 10 species.

44.     Even if the Service had identified specific species in its workplan that preclude listing these 10 species, it has largely failed to implement the workplan. The Service failed to make findings scheduled in the workplan for 30 species in Fiscal Year 2017, the first year the workplan was in effect. In Fiscal Year 2018, that number rose to 78. And in Fiscal Years 2019

and 2020, it was 46 and 58 species, respectively. The Service certainly cannot rely on a workplan that it has failed to implement to justify precluding the listing of these 10 severely imperiled species.

45.     Compounding its error, the Service also stated that the listing of these 10 species is precluded by the development of proposed and final critical habitat regulations. 85 Fed. Reg. at 73,168–69; 85 Fed. Reg. at 81,148; 85 Fed. Reg. at 81,817. But the immediate listing of these 10 species can only be precluded "by pending proposals to determine whether any species is an endangered species or a threatened species[,]" and not other work the Service deems to be a higher priority.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (ESA Citizen Suit Claim)

**The Service's "Warranted but Precluded" Findings Fail to Show the Service is Making Expeditious Progress to Add Species to the Lists of Endangered or Threatened Species, and that Listing These Species is Precluded by Pending Proposals to Determine Whether Any Species is an Endangered or Threatened Species**

46.     The Center re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     The Service can find the prompt listing of a petitioned for species is "warranted but precluded" only *if* "expeditious progress is being made to add qualified species to [the lists of endangered or threatened species] and to remove from such lists species for which the protections of the Act are no longer necessary," *and* "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action … is precluded by pending proposals to determine whether any species is an endangered species or a threatened species[.]" 16 U.S.C. § 1533(b)(3)(B)(iii).

14

48.     If the Service is not making expeditious progress to add species to the lists of

endangered and threatened species, or the listing of a species is not precluded by other pending

proposals, the Service must immediately propose and timely promulgate a final listing

determination. *Id.* § 1533(b)(3)(B)(iii)(I).

49.     The Service is not making expeditious progress to add species to the lists of

endangered and threatened species, and the Service has failed to show that the prompt listing of

the northern spotted owl, monarch butterfly, Peñasco least chipmunk, eastern population of

gopher tortoise, San Francisco Bay-Delta population longfin smelt, Texas pimpleback, Texas

fawnsfoot, Texas fatmucket, and magnificent ramshorn is precluded by pending proposals to

determine whether any species is an endangered or threatened species.

50.     The Service is denying vital ESA protections to these 10 species in violation of its

mandatory duties imposed by the ESA, and its failure to make prompt listing determinations for

the 10 species is arbitrary and capricious, and in violation of the ESA. *Id.* § 1533(b)(3)(B)(iii); 5

U.S.C. § 706(2)(A).

**Second Claim for Relief**
**(in the Alternative to Plaintiff's First Claim for Relief)**
**(APA Claim)**

**The Service's "Warranted but Precluded" Findings are Arbitrary and Capricious**

51.     The Center re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs.

52.     When making the "warranted but precluded" findings, the Service is required to

articulate a satisfactory explanation for its actions, including a rational connection between the

facts found and the choice made. It cannot rely on factors Congress did not intend the agency to

consider, ignore an important aspect of the problem, offer an explanation that runs counter to the

15

evidence before the agency, or issue a finding so implausible that it cannot be ascribed to a difference in view or the product of agency expertise.

53.     The Service is not making expeditious progress to add species to the lists of endangered and threatened species, and has not shown that listing of the northern spotted owl, monarch butterfly, Peñasco least chipmunk, eastern population of gopher tortoise, San Francisco Bay-Delta population longfin smelt, Texas pimpleback, Texas fawnsfoot, Texas fatmucket, and magnificent ramshorn is precluded by pending proposals to determine the status of other species.

54.     The Service has failed to articulate a satisfactory explanation for its "warranted but precluded" findings, failed to articulate how the agency is making expeditious progress to add species to the lists of endangered and threatened species, and failed to articulate how the prompt listing of the 10 species was precluded by pending proposals to determine whether any species is an endangered or threatened species. The Service similarly relied on factors Congress did not intend for it to consider, ignored important aspect of the problems, offered an explanation that runs counter to the evidence before it, and issued finding so implausible that they cannot be ascribed to a difference in view or the product of agency expertise.

55.     Accordingly, the Service's "warranted but precluded" findings are arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court issue an Order:

1.     Declaring that Defendants are unlawfully depriving the 10 species of protection under the ESA;

2.     Ordering Defendants to immediately publish proposed rules for the 10 species according to a schedule to be fashioned by the Court;

3.      Awarding Plaintiff its attorneys' fees and costs; and

4.      Awarding Plaintiff such other relief as the Court deems just and proper.


DATED: April 1, 2021                          Respectfully submitted,

                                               */s/ Ryan Adair Shannon*
                                              Ryan Adair Shannon (D.C. Bar No. OR0007)
                                              CENTER FOR BIOLOGICAL DIVERSITY
                                              P.O. Box 11374
                                              Portland, OR 97211
                                              Tel: (917)717-6407
                                              rshannon@biologicaldiversity.org

                                              Amy R. Atwood (D.C. Bar No. 470258)
                                              CENTER FOR BIOLOGICAL DIVERSITY
                                              P.O. Box 11374
                                              Portland, OR 97211
                                              Tel: (917) 717-6401
                                              atwood@biologicaldiversity.org

                                              *Attorneys for Plaintiff*