UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE, *et al.*,<br><br>　　　　　Defendants. | Civ. Action No. 21-884 (EGS) |

## MEMORANDUM OPINION

Plaintiff, the Center for Biological Diversity, challenges the U.S. Fish and Wildlife Service's ("FWS") "warranted but precluded" findings pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544 with respect to ten (10) species, including the Longfin Smelt DPS. *See generally* Compl., ECF No. 1. Westlands Water District ("Westlands") moves to intervene. *See generally* Mot. to Intervene ("Mot."), ECF No. 11. Both Plaintiff and Defendants—FWS, Martha Williams in her official capacity as acting Director of FWS, and the Secretary of the U.S. Department of the Interior—oppose the motion. *See generally* Gov't's Opp'n, ECF No. 12; Pl.'s Opp'n, ECF No. 13. Upon consideration of the motion, oppositions, the reply, the applicable law, and for the reasons explained below, Westlands' Motion to Intervene is **DENIED**.

1

## I.  Background

### A.  Statutory and Regulatory Background

The ESA has been described as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 180 (1978). Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Tennessee Valley Auth.,* 437 U.S. at 184.

The ESA directs the Secretary of the Interior and the Secretary of Commerce to determine whether a species should be listed as "endangered" or "threatened." 16 U.S.C. § 1533. The ESA requires the Secretary of the Interior to publish and maintain a list of all species that have been designated as threatened or endangered. *Id.* § 1533(c). Species are added to and removed from the list after notice and an opportunity for public comment, either on the initiative of the Secretary or as a result of a petition submitted by an "interested person." *Id.* § 1533(b)(1), (3), (5). When petitioned, FWS must, "[t]o the maximum extent practicable," within 90 days make a finding ("90-

day finding") regarding whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If FWS so finds, it must begin a status review, *id.*; and following the completion of that review and within 12 months of receiving the petition, issue a "12-month finding" as to whether listing is: (1) not warranted; (2) warranted; or (3) warranted but precluded by pending proposals to list other species. *Id.* § 1533(b)(3)(B). With respect to a "warranted but precluded" finding, FWS must conclude that listing is warranted, but that:

> (I) the immediate proposal and timely promulgation of a final regulation implementing [listing] . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and
>
> (II) expeditious progress is being made to add qualified species to [the endangered and threatened] lists . . . and to remove from such lists species for which the protections of [the ESA] are no longer necessary.

*Id.* § 1533(b)(3)(B)(iii). For these "candidate species," FWS is required to treat the petition as if it has been resubmitted annually, and make a new 12-month finding for the species within a year. *Id.* § 1533(b)(3)(C)(i). FWS publishes the annual findings in the "Candidate Notice of Review" ("CNOR") in the

3

Federal Register. *See, e.g.*, 85 Fed. Reg. 73,164 (Nov. 16, 2020).

### B. Factual and Procedural Background

"In 2012, [FWS] found that the [Longfin Smelt DPS] warranted listing because the species faces high magnitude threats, including reduced freshwater flows, contaminants, and introduced species." Compl., ECF No. 1 ¶ 33 (citing 77 Fed. Reg. 19,756, 19,787-88 (Apr. 2, 2012) and 85 Fed. Reg. 73,164, 73,173 Nov. 16, 2020). However, FWS determined that while listing the Longfin Smelt DPS was warranted, it was precluded because of higher-priority actions. Gov't's Opp'n, ECF No. 12 at 3 (citing 77 Fed. Reg. 19,756 (Apr. 2, 2012)). Accordingly, FWS "added the Longfin Smelt DPS to the list of Candidates and re-evaluated [its] status each year thereafter, pursuant to 16 U.S.C. § 1533(b)(3)(C)(i)." *Id.* at 4. "On November 16, 2020, [FWS] published its most recent CNOR, finding again that listing the Longfin Smelt DPS is warranted but precluded due to higher priority actions." *Id.* (citing 85 Fed. Reg. 73,164 (Nov. 16, 2020).

Plaintiff filed its Complaint in this proceeding on April 1, 2021, alleging that FWS's warranted but precluded findings as to, among other species, the Longfin Smelt DPS, is arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq*. Compl., ECF No. 1 ¶¶ 51-55. Westlands

filed its Motion to Intervene on May 5, 2021. Mot., ECF No. 11. On July 22, 2021, the parties filed a Joint Motion to Stay, requesting that the Court refer the case (and two others before the Court) to the mediation program. *See* Joint Mot., ECF No. 20. On July 23, 2021, Westlands filed a response to the Joint Motion to Stay, requesting that the Court authorize Westlands to participate in settlement discussions while the Motion to Intervene is pending, or in the alternative requesting that the Court rule on the Motion to Intervene before ruling on the Joint Motion to Stay. *See* Westlands Water District's Response to Joint Motion to Stay ("Westlands' Response"), ECF No. 21.

C. **Proposed Intervenor**

Westlands states that it "is a California water district," Mot. to Intervene, ECF No. 11 at 4[1]; and that it "has contractual entitlement to approximately 1,195,000 acre-feet of [Central Valley Project ("CVP")[2]] water per year." Decl. of Jose Gutierrez ("Gutierrez Decl."), ECF No. 11-2 ¶ 5. The United States Bureau of Reclamation ("Reclamation") conveys the CVP water to various contactors, including Westlands. *Id.* ¶ 4. Westlands avers that

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.
[2] [T]he federal CVP . . . appropriates and re-appropriates water, in part, from the San Francisco Bay ("Bay")/Sacramento-San Joaquin River Delta ("Delta") and the rivers that create them (collectively, the "Bay-Delta watershed"). Mot., ECF No. 11 at 2.

5

Plaintiff "seeks to reduce Westland's CVP water allocation . . . through compelling [ESA] protection for the Longfin Smelt. *Id*. ¶ 6. Westlands further avers that "Plaintiff contends that water diversions, including diversions by the CVP, are a significant cause of the population decrease of the Longfin Smelt and a reason why this species should be expeditiously listed under the ESA as either a threatened or endangered species." *Id*.  Finally, Westlands avers that "additional ESA regulatory restrictions will have significant negative impacts on Westlands and those it serves" including: (1) "increased land fallowing"; (2) "increased costs and higher risks for acquiring supplemental supplies"; (3) "increased groundwater pumping" resulting in, among other things, lower crop yields; (4) "increased soil salinity"; (5) "increased energy use"; (5) "increased water costs for disadvantaged communities"; (6) "permanent crop damage"; (7) "increased unemployment"; (8) "reduced air quality"; and (9) "potential increases to bird strike damage to . . . striker-fighter aircraft. *Id*. ¶ 9.

**II.  Analysis**

    **A.   Intervention as of Right**

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a). In this Circuit, an applicant must meet four criteria to be granted intervention as of right: (1) the application to intervene must be timely; (2) the applicant must

6

demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted).

Further, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") requires the intervenor-applicant to demonstrate standing under Article III of the U.S. Constitution. *See In re Endangered Species Act Section 4 Deadline Litigation*, 704 F.3d 972, 976 (D.C. Cir. 2013). To demonstrate standing, the intervenor-applicant must show: (1) an injury-in-fact that is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) causal connection between the injury and the conduct that is being complained about; and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 561 (1992) (citations omitted). For prospective injuries, imminence means that the injury must be "certainly impending." *Id*. at 564 n.2 (citations omitted). "Because a would-be intervenor's Article III standing presents a question going to this court's jurisdiction, *see Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002), we address it first." *Fund for Animals, Inc., v. Norton*, 322 F.3d 728 732 (D.C. Cir. 2003).

Westlands argues that satisfies the standing requirements because: (1) its injury is economic; (2) its injury "is directly

7

traceable to Plaintiff's claims seeking to list the Longfin Smelt DPS under the ESA"; and (3) "[a] decision to list the Longfin Smelt, DPS, as the result of this lawsuit, will directly impact the future supply of CVP water available to Westlands." Mot., ECF No. 11 at 12.

Plaintiff and Defendants respond that Westlands lacks Article III standing. First, the alleged injury is prospective, but it is not "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); because "WWD can only speculate that the resolution of this action many impact CVP water supply or create further ESA consultation obligations." Gov't's Opp'n, ECF No. 12 at 5 (citing Mot., ECF No. 11 at 6, 7); *see also* Pl.'s Opp'n, ECF No. 13 at 11 ("the ultimate listing of the longfin smelt and any potential attendant impact on Westlands' contractual water rights are entirely speculative"). Second, Westlands does not satisfy the causation element because at this juncture, it is speculative whether: (1) Defendants will lose on the merits of this case; (2) the Longfin Smelt will eventually be listed as threatened or endangered; and (3) CVP operations will be subject to further ESA consultation and whether that consultation will restrict CVP water allocations to the detriment of Westlands. *Id.* at 6. Finally, Westlands does not satisfy the redressability element because if Defendants prevail in this case—i.e. the "warranted but precluded" determination

was not arbitrary and capricious—this would have no effect on whether the FWS eventually issues a proposed listing rule for the Longfin Smelt DPS. *Id*. at 7.

Westlands fails to rebut these arguments, instead asserting that it has standing because it "seeks to defend the substance of" FWS's warranted but precluded finding. Reply, ECF No. 17 at 3. Westlands' argument is unpersuasive. Westlands relies on *Nat'l Ass'n of Home Builders v. U.S. Fish and Wildlife Service*, 34 F. Supp 3d 50 (D.D.C. 2014) for the proposition that "[w]arranted-but-precluded' findings . . . are judicially reviewable." *Id*. at 62. While that is an accurate statement, it does not help Westlands establish standing. Westlands' reliance on *County of San Miguel, Colorado v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) is similarly misplaced because there the court found that the proposed intervenors had standing to intervene in a challenge to FWS's determination that listing the subject species as endangered or threatened was not warranted. *Id*. at 38. Here, the question is whether Westlands has standing to intervene at the "warranted but precluded" stage, a stage that is preliminary to a listing determination.

The Court finds that Westlands does not have standing to intervene. First, the injury is not "certainly impending." *Lujan*, 504 U.S. at 564 n.2 (citations omitted). Rather, Westlands avers that its injury will be caused by "additional

ESA regulatory restrictions." Gutierrez Decl., ECF No. 11-2 ¶ 9. Plaintiff's claim here is that FWS's warranted but precluded finding is arbitrary and capricious. Accordingly, whether and what additional ESA regulatory restrictions may be imposed is speculative at this juncture and is not the claim before the Court. The Court also finds that Westlands has failed to satisfy the causation and redressability elements of Article III standing. Westlands' alleged injury is based on a potential future listing of the Longfin Smelt DPS, which is not before the Court. Regardless of whether the Court rules in favor of Plaintiff or Defendants, that ruling will have no direct impact on whether there will be additional ESA restrictions.

For the same reasons, the Court finds that Westlands has failed to demonstrate a legally protected interest. *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1291-92 (D.C. Cir. 1980) (defining a legally protectable interest as one which is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment"). Accordingly, the Court need not consider the remaining elements of the four-part test.

Because the Court finds that Westlands does not have standing to intervene and has failed to demonstrate a legally protectable interest in this case, the Court **DENIES** Westlands' motion to intervene as of right.

10

**B. Permissive Intervention**

In the alternative, Westlands moves for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b)(1)(B) provides for permissive intervention on a timely motion, where the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). To litigate a claim on the merits under Rule 24(b)(2), the prospective intervenor must demonstrate (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998).[3] "If a prospective intervenor satisfies these criteria, courts 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *In re Endangered Species Act Section 4 Deadline Litigation*, 270 F.R.D. 1, 6 (D.D.C. 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)). The Court may also consider "whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal questions presented." *Aristotle Int'l, Inc. v. NPG Software, Inc.*, 714 F.

---

[3] It is unclear "whether standing is necessary for permissive intervention." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000).

11

Supp. 2d 1, 18 (D.D.C. 2010) (quoting *H.L. Hayden Co. v. Siemens Med. Sys., Inc.* 797 F.2d 85, 89 (2d Cir. 1986)). "District Courts have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action." *Nat'l Children's Ctr.,* 146 F.3d at 1048.

As a threshold matter, the Court finds that Westlands' motion is timely as Westlands filed its motion 34 days after the Complaint was filed. Mot., ECF No. 11. However, Westlands makes little effort to demonstrate that it satisfies the remaining elements required for permissive intervention, merely asserting that "Plaintiff's claims place Westlands' interests directly at stake" and that its "interests present issues of law and fact common to the main action." *Id*. at 12. Westlands further states that it does not assert any counterclaims. *Id*. Assuming arguendo that Westlands has established these elements, however, the Court considers whether Westlands' intervention could lead to undue delay or would significantly contribute to the just and equitable adjudication of Plaintiff's claims. Based on these considerations, the Court concludes that Westlands' motion should be denied.

First, the Court finds that Westlands' intervention could lead to undue delay. Westlands seeks to participate in the

settlement discussions to oppose settlement: "settlement of this case presents significant risk to Westlands' contractual rights to water from the [CVP], as well as other legally protected interests." Westlands' Response, ECF No. 21 at 1. However, as explained *supra*, Westlands failed to demonstrate a legally protected interest. The Court is unwilling to allow Westlands to intervene to delay the resolution of this case.

Second, the Court finds that Westlands' intervention will not "significantly contribute to . . . the just and equitable adjudication of the legal questions presented." *Aristotle Int'l, Inc.*, 714 F. Supp. 2d at 18. Westlands contends that it "is seeking to intervene to support [FWS] in defending its finding, or to defend the scientific basis for that finding should Federal Defendants choose not to." Reply, ECF No. 17 at 8-9. Westlands states that it "has invested significantly in the development of science used to determine actions that protect and improve the viability of nature fish within the Bay-Delta Watershed." *Id*. at 8. Westlands also relies on its declarant to assert that it "has a strong interest in ensuring that decisions made pursuant to the ESA are based on the best available science, including when it comes to decisions about the relative priorities of list efforts under the ESA." *Id*. (citing Gutierrez Decl., ECF No. 11-2 ¶ 7). However, Westlands' declarant made no averments regarding his knowledge about "the relative priorities

13

of listing efforts under the ESA." Accordingly, Westlands has failed to demonstrate that it has information or expertise regarding the legal issue in this case—whether FWS has made expeditious progress in listing species as endangered or threatened.

Additionally, the Court finds that denying the motion will not prejudice Westlands' interests because as stated above, regardless of whether the Court rules in favor of Plaintiff or Defendants, that ruling will have no direct impact on whether there will be additional ESA restrictions. As this Court has stated in a similar context, Westlands "can best serve its stated interests by participating in the administrative review process for the FWS's eventual listing decision." *In re Endangered Species Act Section 4 Deadline Litigation*, 270 F.R.D. at 6. If FWS ultimately lists the Longfin Smelt DPS, Westlands "can then file its own suit to protect those interests directly." *Id*. "[T]he case before the Court offers [Westlands] no opportunity to effectively vindicate its interests," *id*. at 7; rather, Westlands seeks to delay any eventual listing decision by defending FWS's warranted but precluded finding.

Because the Court finds that intervention could lead to undue delay, would not significantly contribute to the just and equitable adjudication of Plaintiff's claims, and would not

prejudice Westlands' interests, the Court **DENIES** Westlands' request for permissive intervention.

### III. Conclusion

For the reasons explained above, Westlands' Motion to Intervene is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            August 16, 2021**